### ABRAHAM M. BUSBEY v. O. M. RUSSELL.

1. POWER OF ASSIGNEES AND PROBATE COURTS.

Under an assignment for creditors all the power or right which the assignee or the probate court possesses in enforcing the trust is to sell the property and distribute the proceeds among creditors.

2. CANNOT ALTER TERMS OF LEASE WITHOUT CONSENT OF CREDITORS.

Such assignee, therefore, has no power to modify or change the terms of a lease which is upon the premises at the time of the assignment, and the subsequent approval of the probate judge, endorsed on the contract, gives it no force or effect, where the consent of creditors has not been obtained.

3. MODIFICATION VOID AS AGAINST PURCHASER WITH NOTICE.

Such modification is, therefore, void against a purchaser at the assignee's sale, although the sale was made subject to "all legal contracts for oil and gas" and although the purchaser knew of the modification of the lease at and before the purchase.

4. MEANING OF THE WORD "INCOME" OUTSIDE COMMERCIAL TRANSACTIONS.

The meaning of the word "income" in the ordinary commercial sense may mean net or clear income, but where the instrument to be construed is not of commercial character, the question is not to be determined by strict commercial usage, but by the intention of the parties as deduced from the context or subject-matter and the character of the persons contracting.

5. IN GAS AND OIL LEASE IT IS CONSTRUED TO MEAN GROSS INCOME.

Royalties on minerals are usually assessed on the marketable amount produced, or made a share of the amount produced and it is fairly to be inferred, where lessor, in a gas and oil lease, stipulated for one-eighth of the income from gas produced and sold, he intended and it was understood to be one-eighth of the gross income or receipts from the sale; and particularly where the lease provides that lessor shall receive one-eighth of the oil produced, inasmuch as it is fair to presume that if the parties intended the royalty on gas to be less, or one-eighth of the net income, they would have said so in the contract.

APPEAL from the Court of Common Pleas of Harrison county.

LAUBIE, J.

The case is here upon appeal, and is an action for the purpose of quieting title of the plaintiff against a claim made by Russell, in reference to certain premises in this county, and for an accounting of moneys due as "royalty" on natural gas. It is claimed upon the part of Russell

Harrison Circuit Court.

that the plaintiff, in purchasing the premises in question, purchased and took them subject to his lease.

The farm in question was owned by the father of the plaintiff, who became insolvent and made an assignment of the farm, for the benefit of creditors, to H. L. Thompson. Prior to that time, he had executed a lease to Wood & Co., of oil and gas rights in the farm. The lease to Wood & Co. had been assigned to the Jewett Oil Co., and two wells had been drilled upon the land from which it was supposed that gas in paying quantities might be had, and thus the matter stood at the time of the assignment by Busby to Thompson of the farm for the benefit of creditors.

That lease had been recorded, and was, in all respects, legal, and the party purchasing the premises at the assignee's sale, the present plaintiff, took subject to the rights of the lessees and their assigns under the lease. But after the assignment the Jewett Oil Co. wanted to sell to Russell, the present defendant, and Russell did not like the terms of the lease, and upon application to the assignee, the assignee modified the lease and changed its terms. The original lease provided in regard to the gas for a royalty to be paid of " one-eighth of income dollars; " and this was changed by the contract of the assignee with Russell and modified so that the royalty was to be $100 a year for each well while gas was obtained in marketable quantities. That contract, made, perhaps, six months before the sale by the assignee of the farm, was handed to the probate judge, and he endorsed upon it an approval, but did nothing further.

It is claimed that the lease thus modified by the assignee bound the plaintiff—that he knew of that lease when he bought the farm; that it was a good and valid lease, and, therefore, bound him.

The plaintiff knew that Russell was in possession when he bought the farm at the assignee sale. He admits, also, that he knew of the modification of the lease, but he denies that it was legal—that it had any validity. He claims that this modification of the lease was void, and that he is entitled as the successor of the lessor, his father, to the royalty provided in the original lease.

Now, when we turn to the order of sale, there was nothing in the order originally, as issued by the probate judge, in regard to this lease at all, but when the assignee came to sell this was written and attached to the order of sale by him:

" Also subject to any and all rights of the Ohio Oil Company, the Jewett Oil Company or the Harrison National Bank, of Cadiz, Ohio, or either of them, in any of said premises in all legal contracts in relation to oil or gas, and the purchaser shall take the royalty under said lease."

It is claimed that the auctioneer stated that the purchaser would take the farm subject to these leases, but it is said by the witnesses that what is written here is what he stated. At all events, we find it in writing, and that is better than the memory of witnesses—writing, and made at the time, with no mention of Russell or his lease in it.

But whether Russell was named at all is entirely immaterial, because the reservation is limited to legal contracts in relation to oil and gas held by the parties named.

As I have said, the plaintiff claims that this modified or new lease made by the assignee was not legal—that it was absolutely void and of no effect. And in that contention we agree with counsel for the plaintiff. It was illegal and void, the assignee having no authority to make it

or the probate judge thus to approve it.   The assignment was for the benefit of creditors, and all the power or right that the assignee or the probate court ordinarily possessed in enforcing the trust was to sell the property and distribute the proceeds among the creditors.   The assignee had no right to change the terms of any lease that was upon the premises at the time of the assignment, and the subsequent approval of the probate judge endorsed on the contract gave it no force or effect, the consent of the creditors having not been applied for and obtained.

The plaintiff, Busbey, therefore, did not take the farm subject to the lease as modified by the assignee.   He took it subject to the terms of the original lease, and only that.   What effect it would have to show that such change was to the benefit of the creditors, or that a decree had been made by the probate court authorizing such change, in a proceeding brought for that purpose, we need not now consider.

This leaves the question remaining, what is the royalty to be paid? It is asserted that, under this original lease, the plaintiff is entitled to one-eighth of the gross income ; that he does not know what that was, has no means of ascertaining it, and he calls upon the defendant to account and state amount of the income.   It is agreed between the parties that the account rendered by Mr. Russell is correct.   The query is whether it shall be upon the gross income or the net income, and also what would constitute the net income.

Mr. Russell apparently contends not only that it is the net income the royalty of one-eighth is to be apportioned to the plaintiff upon, but that the net income can only be ascertained by taking the costs of improvements as well as the mere expenses of running the business into account.

To make the first part of this contention clear, the phrase "net income," or the word "profits," should have been used.   Generally, the word "income" has a different signification from these.

Income is "that which comes in or is received from any business or investment of capital, without reference to the outgoing expenditures; while 'profits' generally means the gain which is made upon any business investment when both receipts and payments are taken into account. Income, when applied to the affairs of an individual, expresses the same idea that 'revenue' does when applied to the affairs of a state or nation." People v. Supervisors, 4 Hill, 20 ; 7 Hill., 504 ; Anderson's Law Dic., 532 ; Cooley on Tax., (2nd Ed.) 221 ; 19 E. & A. E. of L., 258 ; Millar v. Douglass, 42 Tex., 288.

At all events, the meaning of "income" must generally be determined by the intention of the parties as deduced from the context, the subject-matter of the contract and the character of the person contracting.

"But in arriving at the meaning of words, we must understand not only how, but by whom, they are used ; otherwise the intent of the person using them may be wholly perverted.   One may say that his income from a certain property amounts to a certain sum, and yet he may be speaking merely of the accruing rent, without regard to either insurance, taxes or repairs.   *   *   *   And we well understand that outside of business circles, it is so common thus to speak of income, that we can never know whether net or gross income is meant without further inquiry."   Thompson's App., 100 Pa. St., 478.

In that case the testator gave his widow "one-half of the income" of his farm, which was to be rented until his youngest child should come

of age. The testator, the court said, was a farmer who had previously rented his farm on the shares, and it was natural to presume he meant the net income. Besides one definition of "income" was "produce," and if that, or "product," was substituted, the court said, the meaning would be free from obscurity.

In Millar v. Douglass, *supra*, it was held that the taxable "income" of a merchant meant, according to the statute, his receipts for the sale of goods, less their actual cost.

Webster, in part, defines income as "the produce of a farm; the rent of houses; the proceeds of professional business;" and Worcester, as "produce; revenue; receipts."

In the case at bar, it is evident from the context, the subject-matter of the contract and the character of the contracting parties, that by the word "income" was meant gross income; that it was used in the sense of product, revenue or receipts.

By the lease in question, the lessees, Wood & Co., agreed to test the premises primarily for oil, and were to have possession for two years or as much longer as oil was found in paying quantities, and one-eighth part of all the oil produced and saved was by them to be delivered to the lessor, free of expense into tanks or into pipe lines to his credit. It was further agreed that if wells were found producing gas in sufficient quantity to justify marketing, the lessor "should be paid at the rate of one-eighth of income dollars per year for such well so long as the gas therefrom should be sold."

It will be seen, therefore, that the parties contracting were a farmer and a company engaged in "developing" oil and gas territory; that the subject-matter was the testing for oil, and, incidentally, for gas, on the farm of the lessor, and its production by the lessees for division between the parties, if found; and the context, that the lessor's share of the oil was to be one-eighth of the whole amount produced and saved, delivered to him free from expense.

Now, we may admit, as was said in Thompson's Appeal, *supra*, that in the ordinary commercial sense the term "income" may mean net or clear income; but, like that case, in the case at bar the instrument to be construed is not of a commercial character—not a contract between merchants, nor between merchant and customer—and, therefore, the question is not to be determined by strict commercial usage, but by the principle laid down in that case, which takes into consideration how and by whom the term was used, in determining the meaning of the parties in the use of the term.

Looking at it in that light, the contract in this case makes it clear that the parties intended gross income, and not net.

It is a matter of common observation that royalties on minerals are assessed on the marketable amount produced, or are made a share of the amount produced; and it is fairly to be inferred that when the lessor in this instance stipulated for one-eighth of the income from the gas produced and sold, he intended, and it was understood to be, one-eighth of the gross income or receipts from the sale; and the stipulation as to the oil, we think, places it beyond question.

It was impracticable to deliver one-eighth of the gas itself to the lessor as was to be done with the oil, and it seems reasonable that he would stipulate for the same proportion of the receipts from the marketed gas, instead of running the risk of no substantial return for the gas by reason of bad financial management and wasteful expenditures on

the part of the lessees. Further, it is fair to assume that, with such a provision in regard to the oil, if the parties intended the royalty on the gas to be one-eighth of the net income, they would have said so in the contract.

It is to be remarked that the language used in regard to the royalty on the gas is very peculiar; it is one-eighth of the income "dollars." apparently substituting dollars for gas. The dollars received for the gas could be the subject of division if the gas could not be; and so it is provided the lessor is to receive one-eighth of them as his share.

But we do not put our decision upon this ground, because the original lease, which we have not seen, may have been a printed blank, and might show that the word "dollars" was printed, and carelessly not erased when the blank form was filled. We mainly rely upon the reasons heretofore stated for our conclusion.

Decree may be taken for the one-eighth of the gross receipts during the period stated in the petition, as shown by the statement furnished by the defendant, with interest, and for quieting the plaintiff's title as prayed for.

## PLEADING—VARIANCE—JUDGMENT—INTEREST.